UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BEVERLY K. STOREY and BRENDA L.
CARL, individually and on behalf of
themselves and all others similarly situated,

                    Plaintiffs,               CASE NO. 15-CV-13577
                                       HONORABLE GEORGE CARAM STEEH

     v.

ATTENDS HEALTHCARE PRODUCTS, INC.,

                    Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S RENEWED
MOTION TO DISMISS (DOC. 14) AND GRANTING PLAINTIFFS'
REQUEST TO FILE A SECOND AMENDED COMPLAINT

      Defendant Attends Healthcare Products, Inc. ("Defendant") sells extended-wear

incontinence products ("Extended Wear Products"). According to named plaintiffs Beverly

Storey and Brenda Carl ("Plaintiffs"), Defendant falsely represented that its Extended Wear

Products were safe for long-term use and failed to warn of the risks associated with long-

term use. Plaintiffs' first amended complaint ("FAC") contains four counts: (1) breach of the

implied warranty of merchantability, (2) breach of an implied warranty of fitness for a

particular purpose, (3) violation of state consumer protection acts, and (4) unjust

enrichment. (Doc. 11). The two named Plaintiffs state that they purchased the Extended

Wear Products in Michigan and Arizona,[1] and they ultimately aspire to represent a

nationwide class of consumers who purchased the Extended Wear Products throughout

_____

      [1] Specifically, Ms. Storey purchased the Extended Wear Products in Michigan.
(FAC ¶ 4). Ms. Carl purchased the Extended Wear Products in both Michigan and
Arizona. (*Id.* ¶ 5).

the United States.  Thus, each count of the FAC cites to the relevant statutory provisions of all fifty states and the District of Columbia.[2]

Defendant now moves the Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike the class allegations. (Doc. 14, Def.'s Mot. Dismiss). Plaintiffs filed a Response, and Defendant filed a Reply to that Response. (Doc. 16, Pls.' Resp.; Doc. 17, Def.'s Reply).  In its Motion to Dismiss, Defendant argues that Plaintiffs lack standing and that Plaintiffs have failed to state a claim under any of the four counts, for various reasons.  Moreover, Defendant argues that the Court should strike Plaintiffs' class allegations because some of the putative class members' claims accrued outside the applicable statutes of limitations and are therefore time barred.

Ruling on the instant motion would appear to be a daunting task, given that Plaintiffs have asserted their four counts under the laws of all fifty states and the District of Columbia.  But ultimately the questions to be decided today are (1) whether the two *named* Plaintiffs have standing and (2) whether the Plaintiffs have stated a claim upon which relief may be granted to the two *named* Plaintiffs.  The Court has not yet certified a class, and the possibility that Plaintiffs have stated a claim for relief on behalf of some unnamed putative class member is not enough to allow the FAC to survive the instant motion.  Since the two parties agree (or assume) that the laws of Arizona and Michigan govern the two named Plaintiffs' claims, the Court will only have to consider Arizona and Michigan law to rule on the instant motion.

_____

[2] For example, in Count 1 (breach of the implied warranty of merchantability), Plaintiffs include a lengthy string citation that references forty-nine states' and the District of Columbia's versions of the U.C.C.'s implied-warranty-of-merchantability provision.  (*See* FAC ¶ 46).  Plaintiffs have omitted a citation to Nebraska law, perhaps due to an oversight.

The Court will grant Defendant's motion to dismiss for the reasons explained below. In short, a fundamental flaw permeates all four counts of the FAC. All four counts are premised on Plaintiffs' contention that Defendant's Extended Wear Products are not safe for long-term use. But Plaintiffs have utterly failed to allege *any* facts that would render this contention plausible, other than a conclusory allegation that use of the Extended Wear Products "increase[s] the risk or likelihood of serious health consequences, including urinary tract infections and/or other irritations of the skin." (FAC ¶ 88). Such a conclusory allegation is entitled to no weight under the Rule 12(b)(6) standard, as explicated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court will, however, grant Plaintiffs an opportunity to amend their FAC pursuant to Federal Rule of Civil Procedure 15(a)(2), for reasons that will be explained in detail below.

## I. RULE 12(B)(6) STANDARD

When a party attacks a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must decide whether the complaint states a claim upon which relief may be granted. Generally speaking, the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). But there are some types of allegations that a court need not accept as true and which are therefore insufficient to allow a complaint to survive a Rule 12(b)(6) motion. In particular, a court should not accept "legal conclusions cloaked as fact." *Haddad v. Randall S. Miller Associates, PC*, 587 F. App'x 959, 963 (6th Cir. 2014)

(unpublished).  Similarly, "naked assertions devoid of further factual enhancement" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (citations and quotation marks omitted).   Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Id.*

## II. DISCUSSION

### A.    The Named Plaintiffs Have Standing.

Defendant first argues that the Court must dismiss the FAC because Plaintiffs lack standing under Article III of the Constitution.  Defendant asserts that Plaintiffs lack standing because they have not alleged that they suffered any injury in fact.  In their Response, Plaintiffs argue that it would be premature for the Court to rule on standing.  The Court rejects Plaintiffs' argument that the Court should delay in addressing the question whether the *named* Plaintiffs (as opposed to the unnamed putative class members) have standing. The Court holds that the named Plaintiffs have established standing.

### 1.    The Court Will Address Standing at This Time.

As explained above, Defendant claims that Plaintiffs lack standing.   Plaintiffs, however, argue that it would be "premature" for the Court to address the issue of Article III standing prior to ruling on class certification.  (Pls.' Resp. at 15).  Plaintiffs are correct that

4

additional standing issues would potentially arise if the question of class certification were to ever come before the Court.[3]  But it would not be premature for the Court to address the standing of the named Plaintiffs (that is, the putative class representatives, Ms. Storey and Ms. Carl).  After all, if the named Plaintiffs lack standing, then the action must be dismissed, regardless of whether some (unnamed) members of the proposed class have standing. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

As the cases cited by Plaintiffs indicate, in a situation where the Rule 23 class-certification issues are "logically antecedent" to the Article III standing issues, it is appropriate for a court to defer ruling on standing until after ruling on class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591. 612 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  Class-certification issues are logically antecedent to Article III issues when the Article III issues arise from the certification of the class.  *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 999-1000 (E.D. Mich. 2014).  In the instant case, the class-certification issues are *not* logically antecedent to the Article III issues concerning the *named* Plaintiffs.  The Defendant's standing arguments have nothing to do with the unnamed putative class members.  Therefore, *Amchem* and *Ortiz* are not controlling, and the Court will not defer ruling on standing.

---

[3] As already stated above, this opinion and order will dismiss all four counts of the FAC.  Thus, the question of class certification will come before the Court only if Plaintiffs file a second amended complaint that survives any subsequent motion to dismiss filed by Defendant.

## 2.    The Named Plaintiffs Were Injured in Fact.

A plaintiff bears the burden of demonstrating that he or she has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The plaintiff must establish three elements.  *Id.*  First, the plaintiff must establish that he or she has suffered an "injury in fact."  *Id.* at 560.  Second, the plaintiff must establish that there is "a causal connection between the injury and the [defendant's] conduct complained of."  *Id.*  And third, the plaintiff must establish that it is likely that the injury will be redressed if the court grants the requested relief.  *Id.* at 561.  Here, Defendant only challenges the injury-in-fact element.  The other two elements (causation and redressability) are obviously satisfied:  If Plaintiffs were indeed injured as a result of their purchase of Defendant's Extended Wear Products, then Defendant's conduct caused their injury, and the requested money damages from Defendant would redress that injury.  Thus, the analysis below focuses on the injury-in-fact element.

In order for a plaintiff to show an injury in fact, the plaintiff must establish that he or she has suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citation and internal quotation marks omitted).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  A "risk of real harm" is sufficient to satisfy the concreteness requirement.  *Id.*  Moreover, an injury in fact "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)); *accord Lujan*, 504 U.S. at 578.  "But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that

the party seeking review must himself have suffered an injury."  *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972).

As stated above, the crux of all four of Plaintiffs' counts is that Defendant falsely represented that its Extended Wear Products were safe for long-term use and failed to warn of the dangers of long-term use.  Defendant claims that Plaintiffs have failed to satisfy the injury-in-fact requirement, because "Plaintiffs' alleged 'injury' is that Attends should have warned of a [health] risk that never materialized."  (Def.'s Mot. Dismiss 17).  Plaintiffs concede that they have not alleged that they were physically injured by their use of the Extended Wear Products.  (Pls.' Resp. 12).   Indeed, Plaintiffs have even expressly excluded persons "claim[ing] personal injury, wrongful death, and/or emotional distress" from their proposed class.  (FAC ¶ 27; *see also* Pls.' Resp. 12).  Rather, Plaintiffs claim that they were damaged by "among other things, being deceived into purchasing more expensive Extended Wear Products based on Defendant's false and misleading representations and/or material omissions indicating that such Products were safe to wear for an extended period of time."  (FAC ¶¶ 59, 71, 89-90; *see also* Pls.' Resp. 12).

Defendant relies on out-of-circuit cases for its argument that an increased risk is not an injury in fact unless the risk actually manifests itself.  *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002).  But these cases are not binding on this Court, and there is a Sixth Circuit case that suggests that an increased risk *can* constitute an injury in fact, even if the risk does not manifest itself.

In *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838 (6th Cir. 2013), the Sixth Circuit held that it was appropriate to certify a plaintiff class

that included class members whose washing machines had not manifested the defect at issue in the case. The washing machines supposedly had a tendency to become moldy, but not all of the buyers (the members of the proposed plaintiff class) had actually experienced mold in their washing machines. *Id.* at 849. The plaintiffs alleged, *inter alia*, breach of implied warranty under Ohio law. *Id.* at 853. The defendant manufacturer argued that "the certified class [was] too broad because it include[d] [washing-machine] owners who allegedly ha[d] not experienced a mold problem and [were] pleased with the performance of their [machines]." *Id.* at 855. The court rejected this argument, explaining that "[b]ecause *all* [washing-machine] owners were injured at the point of sale upon paying a premium price for the [machines] as designed, even those owners who ha[d] not experienced a mold problem [were] properly included within the certified class." *Id.* at 857. The court was not confronted with, nor did it address, the issue of standing. However, the same reasoning would apply in addressing that issue.[4]  *See also In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1098-99 (S.D. Ind. 2001) (holding that under Michigan law "there is no requirement that Plaintiffs demonstrate any injury to their person or property as a result of the [defendant's] breach, but only that they purchased an unmerchantable product.").

The Court will follow the reasoning in *Whirlpool* and *Bridgestone/Firestone.* Plaintiffs have sufficiently pleaded an injury in fact. Plaintiffs claim that they paid a premium for incontinence products that Defendant falsely represented as being safe for long-term use.

---

[4] Moreover, a court (even an appellate court) must *sua sponte* address any Article III standing issues that arise. *See Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001). If the no-mold *Whirlpool* plaintiffs had lacked standing, the Sixth Circuit would have so held.

If this allegation is true, then Plaintiffs were harmed economically regardless of whether the alleged defect manifested. This was a *de facto*, concrete harm. Moreover, the harm was particularized, because only Plaintiffs and others who purchased the Extended Wear Products were harmed in this manner. Therefore, Plaintiffs have satisfied the injury-in-fact requirement. As stated above, Plaintiffs have also established the other requirements of Article III standing; thus, Plaintiffs have established standing.[5]

**B.      Plaintiffs Have Failed to State a Claim For Breach of the Implied Warranty of Merchantability (Count 1) or Breach of an Implied Warranty of Fitness for a Particular Purpose (Count 2).**

In Counts 1 and 2, Plaintiffs allege breach of the implied warranties of merchantability and of fitness for a particular purpose. In both counts, Plaintiffs claim that Defendant impliedly warranted that its Extended Wear Products were safe for long-term use, and that contrary to this warranty the Extended Wear Products were unsafe for long-term use. The Court will dismiss Counts 1 and 2 because Plaintiffs have failed to state a claim in either count. In short, Plaintiffs have failed to allege facts that would render plausible their claim that the Extended Wear Products were unsafe.

_____

[5] Defendant also argues that Plaintiffs lack standing to "assert claims based on the laws of states where they have no connection." (Def.'s Mot. Dismiss 16 (capitalization removed)). This argument is premised on a misreading of Plaintiffs' FAC. The parties agree (and the Court assumes for the purpose of ruling on the instant motion) that the named Plaintiffs' claims are governed by the laws of Arizona and Michigan. Plaintiffs have cited to the laws of the other forty-eight states and the District of Columbia in their FAC in anticipation that the Court will ultimately certify their proposed class. It is not the named Plaintiffs, but rather the unnamed putative class members, who would be claiming under these other states' laws. Thus, there is no reason for the Court to rule that the Plaintiffs lack standing to sue under these other states' laws.

### 1. Plaintiffs Have Withdrawn Their Arizona Law Claim in Count 1, and Have Conceded That They Have No Basis to Pursue Count 2 Under Arizona Law.

As a preliminary matter, Plaintiffs have withdrawn their Arizona law claim for breach of the implied warranty of merchantability (Count 1). (Pls.' Resp. 18 n.2; *see also* Def.'s Mot. Dismiss 20). A plaintiff must demonstrate privity of contract in order to bring an implied warranty claim under Arizona law, and Plaintiffs concede that they have failed to demonstrate privity. (*See* Pls. Resp. 18 n.2; *see also Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 24, 126 P.3d 165, 171 (Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty.")). Although Plaintiffs do not expressly withdraw their Arizona law claim for breach of implied warranty of fitness for a particular purpose (Count 2), their concession that there is no privity of contract in this case vitiates that claim as well. Thus, the named Plaintiffs will have to demonstrate that they have stated a claim for relief under Michigan law in order for their two breach-of-implied-warranty claims (Counts 1 and 2) to survive the motion to dismiss.

### 2. Plaintiffs Have Failed to Allege Facts Sufficient to Establish That Defendant's Products Were Not Merchantable.

Defendant argues that the Court must dismiss Count 1 (breach of the implied warranty of merchantability) because Plaintiffs have failed to allege facts sufficient to show that the Extended Wear Products were not merchantable under Michigan law. Defendant's argument has merit, and consequently the Court will dismiss Count 1 for failure to state a claim.

"Unless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that

10

kind." Mich. Comp. Laws. § 440.2314(1). Section 440.2314(2) provides that goods are

merchantable only if they

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the
> description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality
> and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may
> require; and
> (f) conform to the promises or affirmations of fact made on the container or
> label if any.

This list is nonexhaustive. *See id.* § 440.2314 official cmt. ("Subsection (2) does not

purport to exhaust the meaning of 'merchantable' . . . ."). Moreover, a seller's violation of

*any* one of these six requirements is a sufficient ground for a buyer to sue for breach of

implied warranty of merchantability. Nonetheless, the seller's products need not be perfect

in order to be merchantable. *Computer Network, Inc. v. AM Gen. Corp.*, 265 Mich. App.

309, 316-17, 696 N.W.2d 49, 56 (2005) ("Merchantable is not a synonym for perfect."

(quoting *Guaranteed Constr. Co. v. Gold Bond Prods.*, 153 Mich. App. 385, 392-93, 395

N.W.2d 332, 336 (1986)) (internal quotation marks omitted)).

In the instant case, Plaintiffs allege that the labels on Defendant's Extended Wear

Products contained "representations . . . that they could be used for an extended period of

time." (FAC ¶ 19). Specifically, the products were labeled as "Overnight Breathable

Briefs." (*Id.* ¶ 10). In their complaint, Plaintiffs also quote a "Brand Promise" from an

earlier version of Defendant's website. (*See id.* ¶ 11). The "Brand Promise" stated that

Defendant "implement[s] stringent quality control procedures, so all Attends products meet

or exceed the industry standard of care." (*Id.*). The website also allegedly stated that

Defendant's Extended Care Products are "[r]ecommended by healthcare professionals

11

. . . [and] are perfect for light to severe urinary incontinence and fecal incontinence for both ambulatory and sedentary users." (*Id.*).[6]  Furthermore, Defendant allegedly advertised its Extended Wear Products "as appropriate for 'continuous, heavy leaking of urine day and night' featuring 'Triple-tier moisture locking system . . . .'" (*Id.* ¶ 10).  Plaintiffs allege that contrary to all of these representations, Defendant's Extended Wear Products "were not safe for . . . use" over long periods of time and "increased the risk of adverse health consequences to consumers when used as directed."  (*Id.* ¶ 12).

Based on these alleged facts, Plaintiffs claim that Defendant breached the implied warranty of merchantability because (1) "the Extended Wear Products were not safe and fit for their ordinary purpose and/or use, which involved being worn for extended periods"; (2) the "Extended Wear Products increased the risk of adverse health consequences compared to other non-extended wear products in the market"; and (3) the Extended Wear Products "fail[ed] to 'conform to the promises or affirmations of fact made on the container or label.'"  (FAC ¶¶ 54, 56, 57 (quoting Mich. Comp. Laws § 440.2314(2)(f))).

Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability.   Plaintiffs' three theories for breach of the implied warranty of merchantability all boil down to an allegation that the Extended Wear Products were unmerchantable because their use resulted in an "increased . . . risk of adverse health

_____

[6] Defendant argues that these representations on Defendant's website are irrelevant.  (*See* Def.'s Mot Dismiss 26-27).  Plaintiffs allege that they purchased the Extended Wear Products from 2005 to December 2014. (FAC ¶ 12).  But Plaintiffs quote Defendant's website as it existed in *September 2015.*  (FAC ¶ 11).  Thus, the argument goes, the quoted text from the website could not have created an implied warranty.  Defendant has a point. But at this pre-discovery, Rule 12(b)(6) phase, Plaintiffs' allegations should suffice.  It is reasonable to assume that Defendant's website has not changed substantially over the years.

consequences."  But this conclusory allegation is insufficient to survive a Rule 12(b)(6) motion under *Twombly* and *Iqbal*.  *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374-75 (6th Cir. 2011) ("These allegations are not well-pleaded, and their conclusory nature 'disentitles them to the presumption of truth.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009))).

Later in their complaint, in the sections for Counts 2 and 3, Plaintiffs provide some additional details on the alleged "adverse health consequences."  Specifically, the Extended Wear Products allegedly "expos[ed] consumers to an increased risk of dangerous urinary tract infections" and "other irritations of the skin."  (FAC ¶¶ 69, 88).[7]  Even these more specific allegations are insufficient to allow Count 1 to survive Defendant's Rule 12(b)(6) motion.  Plaintiffs do not allege that they themselves have experienced urinary tract infections or skin irritation.  Plaintiffs do not set forth any anecdotal or statistical evidence that individuals who have used Defendant's products have experienced urinary tract infections or skin irritation.  Plaintiffs do not allege that there has been a recall of Defendant's products.  Plaintiffs do not state how much the "risk" actually increases when individuals use Defendant's products.  Plaintiffs do not allege any mechanism by which Defendant's products could induce urinary tract infections or skin irritation.  Plaintiffs do not allege that there are other extended-wear products on the market that are superior to

---

[7] Inexplicably, Plaintiffs failed to plead these allegations in Count 1 or otherwise incorporate them by reference into Count 1.  (*See* FAC ¶ 43 (incorporating by reference all *preceding* allegations but not the *subsequent* allegations in paragraphs 69 and 88)).  This is a relatively minor and technical pleading defect, and the Court, in its discretion, will excuse it.  It is worth noting, however, that Plaintiffs already amended their complaint once, and they did so *after* Defendant pointed out this defect, in Defendant's initial motion to dismiss.  (Doc. 6 at 22 n.3 ("In Count II, the complaint refers in passing to 'urinary tract infections' but this allegation does not appear in Count I.")).

Defendant's Extended Wear Products. Certainly, Plaintiffs would not need to do *all* of these things for their claim to survive a Rule 12(b)(6) motion. But Plaintiffs do not do *any* of these things. They utterly fail to allege *any* facts that would tend to make plausible their otherwise bare and conclusory allegations that use of Defendant's Extended Care Products leads to increased risk of urinary tract infections, skin irritation, or other "adverse health consequences." And they fail to allege any facts that would suggest that this alleged increased risk was sufficiently serious to render the Extended Care Products unmerchantable. *See Guaranteed Constr. Co. v. Gold Bond Prods.*, 153 Mich. App. 385, 392-93, 395 N.W.2d 332, 336 (1986) ("Merchantable is not a synonym for perfect."). Plaintiffs' allegations are mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court is unaware of any case in which a court has held that similarly vague and unsupported allegations of adverse health consequences were sufficient to allow an implied-warranty-of-merchantability claim to survive a defendant's Rule 12(b)(6) motion. *Compare, e.g.*, *Sellers v. Boehringer Ingelheim Pharm., Inc.*, 881 F. Supp. 2d 992, 1010 (S.D. Ill. 2012) (holding that the plaintiff successfully stated a breach-of-implied-warranty claim where she alleged "numerous deficiencies related to [the defendant's anti-coagulant drug, including that it caused excessive bleeding and unlike the other anti-coagulants lacked a reversal agent for 'stabilizing patients who experience a serious bleeding event,' and where the plaintiff further] . . . alleged that she was hospitalized due to excessive bleeding as a result of ingesting [the drug]"), *with Frey v. Novartis Pharm. Corp.*, 642 F. Supp. 2d 787, 791-92, 795 (S.D. Ohio 2009) (holding that the plaintiffs failed to state a claim for manufacturing defect or design defect where plaintiffs' allegations, including that

the defendant "marketed a drug whose risks were not known to the general public, specifically, the risk of multiorgan hypersensitivity disorders," constituted a mere formulaic recital of the elements of the claims). Thus, Plaintiffs have failed to state a claim for breach of implied warranty of merchantability.

Plaintiffs also argue that "[i]t is well-established that a manufacturer may breach its implied warranty of merchantability by failing to warn." (Pls.' Resp. 22). But the Michigan Supreme Court has held that Michigan Compiled Laws § 600.2948(2), which limits a manufacturer's liability for failure to warn, applies to claims of breach of implied warranty of merchantability. *See Greene v. A.P. Prods., Inc.*, 475 Mich. 502, 508, 717 N.W.2d 855, 859 (2006). Thus, in order to bring a claim of breach of implied warranty of merchantability on a failure-to-warn theory, the plaintiff must establish that a "warning was required." *Id.* at 513, 717 N.W.2d at 862. A manufacturer need only warn of risks that are "material" and that are not obvious to a "reasonably prudent product user." *Id.* at 508, 717 N.W.2d at 859 (quoting Mich. Comp. Laws § 600.2948(2)) (internal quotation marks omitted). "[A] 'material risk' is an important or significant exposure to the chance of injury or loss." *Id.* at 510, 717 N.W.2d at 860. Plaintiffs' claim for breach of implied warranty of merchantability fails on the failure-to-warn theory for the same reason that it fails on the others. Plaintiffs make only conclusory allegations that Defendant's Extended Wear Products increased the risk of adverse consequences, including urinary tract infections or skin irritation. Plaintiffs have failed to plead facts that make it plausible that there was a material risk about which Defendant failed to warn. Therefore, Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability.

15

### 3.   Plaintiffs Have Failed to Establish That the Extended Wear Products Were Unfit for Plaintiffs' Particular Use.

In Count 2, Plaintiffs allege that Defendant breached an implied warranty of fitness for a particular purpose.  An implied warranty of fitness for a particular purpose is created when "a seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."  Mich. Comp. Laws § 440.2315; *see also Leavitt v. Monaco Coach Corp.*, 241 Mich. App. 288, 293, 616 N.W.2d 175, 179 (2000).

Plaintiffs' allegations are possibly sufficient to establish the *existence* of an implied warranty of fitness for a particular purpose.[8]  But Plaintiffs' allegations are insufficient to establish that Defendant *breached* an implied warranty of fitness for a particular purpose. The factual basis for Plaintiffs' claim of breach of implied warranty of fitness for a particular purpose (Count 2) is essentially identical to the factual basis for Count 1, as summarized above.  (*See* FAC ¶¶ 62-73).[9]  As explained in the section above, Plaintiffs make only

---

[8] Plaintiffs allege that Defendant marketed its Extended Wear Products in a way that suggested that they could be used long term.  Moreover, Defendant's public website stated, *inter alia*, that Defendant's Extended Care Products are "[r]ecommended by healthcare professionals . . . [and] are perfect for light to severe urinary incontinence and fecal incontinence for both ambulatory and sedentary users." (*See* FAC ¶ 11).  This evidence tends to show that Plaintiffs intended to purchase the Extended Wear Products so that they could wear them for an extended period of time and that Defendant was aware or should have been aware of this intended use. Moreover, the evidence tends to show that Plaintiffs relied on Defendant in selecting an incontinence product that was safe for long-term use and that Defendant was aware or should have been aware of Plaintiffs' reliance.

[9] The only difference is that in Count 2 Plaintiffs include an allegation that consumers' use of Defendant's Extended Wear Products "expos[ed] consumers to an increased risk of dangerous urinary tract infections."  (FAC ¶ 70).  Plaintiffs failed to include this allegation in Count 1, although the Court has excused Plaintiffs' apparent oversight and treated this allegation as if it were part of Count 1.  *See supra* note 7.

16

conclusory allegations about the health risks resulting from use of Defendant's product. Plaintiffs' allegations lack even the slightest factual specificity which might render them plausible and entitled to the presumption of truth under *Twombly* and *Iqbal*.  Thus, the Court is compelled to dismiss Count 2 for the same reason that it must dismiss Count 1.

### C.   Plaintiffs Have Failed to State a Claim Under the Arizona or Michigan Consumer Protection Statutes (Count 3).

Defendant argues that the Court should dismiss Count 3 (violation of state consumer protection statutes).   Defendant argues that Plaintiffs were required to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) yet failed to do so.  (*See* Def.'s Mot. Dismiss 25).  Defendant also argues that Plaintiffs failed to allege that they relied on Defendant's alleged misrepresentations and omissions.  (*See id.* at 29).  As explained below, the Court will dismiss Count 3, for the same reason that the Court dismissed Counts 1 and 2:  Plaintiffs have completely failed to allege facts that would render plausible their contention that the Extended Wear Products create a serious risk of adverse health effects, and therefore Plaintiffs have failed to establish that Defendant misrepresented or omitted any material facts.

The two named Plaintiffs assert claims under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws. § 445.901 *et seq.*, and the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521 *et seq.*  The Court will address Plaintiffs' MCPA claim first.

### 1.   Plaintiffs Have Failed to State a Claim Under the MCPA.

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  Mich. Comp. Laws § 445.903(1).  The

17

MCPA sets forth an expansive list of different types of unfair, unconscionable, or deceptive practices. *See id.* § 445.903(1)(a)-(ll). In their complaint, Plaintiffs specifically allege that Defendant violated subsections (1)(n), (s), (y), (z), and (cc).[10] Plaintiffs make no effort to argue that Defendant violated subsection (1)(n) or (z) in their brief opposing Defendant's motion to dismiss, and the Court finds these arguments to be waived.[11] *Cf. Hensley v. Gassman*, 693 F.3d 681, 687 n.6 (6th Cir. 2012) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)) (internal quotation marks omitted)). Thus, the relevant question for the instant Rule 12(b)(6) motion is whether Plaintiffs adequately pleaded a violation of subsection (1)(s), (y), or (cc).

### a.   Subsections (1)(s) and (cc) of the MCPA

Subsection (1)(s) prohibits a person from "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not

---

[10] Plaintiffs also vaguely suggest that Defendant might have violated the MCPA in ways other than violating subsection (1)(n), (s), (y), (z), or (cc). (*See* FAC ¶ 92 ("Defendant's deceptive acts and unfair practices violate MCPA, *including but not limited to* § 445.903(1)(n), (s), (y), (z), and (cc)." (emphasis added)); Pls.' Resp. 26 ("The acts or practices at issue here *include, among others*: [violations of § 445.903(1)(s), (y), and (cc)]." (emphasis added))). Plaintiffs fail to provide any support for these other theoretical claims. The Court finds that Plaintiffs have waived any argument that Defendant violated some provision of the MCPA other than subsections (1)(n), (s), (y), (z), and (cc).

[11] These claims would also fail on Rule 12(b)(6) grounds. Subsection (1)(n) specifically prohibits a person from "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction." Subsection (1)(z) prohibits a person from "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Plaintiffs allege no facts in their FAC that would tend to support claims on either of these bases.

reasonably be known by the consumer."  Similarly, subsection (1)(cc) prohibits a person from "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Thus, for a plaintiff to state a claim under either subsection (1)(s) or (cc), the plaintiff must state facts showing that the defendant failed to reveal a material fact and that the defendant did so in a misleading manner.  A fact is material if it "is important to the transaction or affects the consumer's decision to enter into the transaction."  *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 283, 600 N.W.2d 384, 398 (1999).

Furthermore, subsections (1)(s) and (cc) are both subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  This is because claims under (1)(s) and (cc) are essentially claims for fraudulent omission.  *See Zine v. Chrysler Corp.*, 236 Mich. App. 261, 282-83, 600 N.W.2d 384, 397-98 (1999) (construing subsections (1)(s) and (cc) "'with reference to the common-law tort of fraud'" (quoting *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178, 182-83, 241 N.W.2d 268, 270 (1983))); *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178, 182-83, 241 N.W.2d 268, 270 (1983) ("[T]he great majority of the specific prohibited practices enumerated in the statute—including those [described in subsections (1)(s) and (cc)]—involve fraud.");  *see also Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008-09 (E.D. Mich 2015).  Therefore, a plaintiff alleging a violation of subsection (1)(s) or (cc) must state with particularity the circumstances constituting the fraudulent omission.  *See* Fed. R. Civ. P. 9(b). In particular, a plaintiff

> must specify "the who, what, when, where, and how" of the alleged omission. Specifically, [the plaintiff] must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud.

19

*Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012) (citation omitted).

Plaintiffs have failed to state a claim under subsection (1)(s) or (cc) because they have not pleaded with specificity facts that support a conclusion that Defendant omitted a material fact. Plaintiffs allege that Defendant failed to inform them that wearing the Extended Wear Products "increased the risk or likelihood of serious health consequences, including urinary tract infections and/or other irritations of the skin." (FAC ¶ 88). Moreover, Plaintiffs claim that Defendant failed to inform them that Defendant's products were "not safe for" use over long periods of time. (*Id.* ¶ 86(c)). As explained in the sections above dealing with the U.C.C. implied-warranty claims, Plaintiffs have utterly failed to adduce facts that tend to support the truth of these conclusory allegations that the Extended Wear Products caused an increased risk of adverse health effects. Thus, Plaintiffs have failed to make a showing that there *are* any material facts involving adverse health effects. Defendant cannot be faulted for failing to reveal material "facts" that did not exist. *Cf. Kaufman v. Wyeth Co.*, No. 02-22692-CIV, 2011 WL 10483568, at *3 (S.D. Fla. Apr. 12, 2011) (unpublished) (rejecting the plaintiff's misrepresentation claim that the defendant had "downplayed" the risk of breast cancer associated with the defendant's product where the plaintiff failed to explain "how each specific fraudulent statement was false or inconsistent with the scientific and medical knowledge at the time"). Therefore, Plaintiffs have failed to state a claim under subsection (1)(s) or (cc).

### b.    Subsection (1)(y) of the MCPA

Plaintiffs also allege a violation of subsection (1)(y). This subsection states (in relevant part) that it is an unfair, unconscionable, or deceptive practice for a party to a

20

transaction to "fail[] . . . to provide . . . promised benefits." Mich. Comp. Laws § 445.903(1)(y). An action under subsection (1)(y) is simply an action for breach of warranty. *See Mikos v. Chrysler Corp.*, 158 Mich. App. 781, 783-85, 404 N.W.2d 783, 784-85 (1987); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011). Thus, a plaintiff asserting an MCPA action under subsection (1)(y) does not need to satisfy the heightened pleading requirements of Rule 9(b). *Packaged Ice*, 779 F. Supp. 2d at 666.

As explained in the sections above discussing Plaintiffs' implied-warranty claims, Plaintiffs have failed to state a claim for breach of implied warranty of merchantability or implied warranty of fitness for a particular purpose. Specifically, Plaintiffs have failed to allege sufficient facts to show that the Defendant's Extended Wear Products caused an increased risk of adverse health consequences, and therefore Plaintiffs have not established breach of any implied warranty that the products were safe. The same reasoning applies here. Plaintiffs have failed to allege facts that show that Defendant's Extended Wear Products failed to measure up to Defendant's alleged promises about the products' safety. Thus, Plaintiffs' MCPA claim also fails under subsection (1)(y).

In sum, Plaintiffs have failed to state a claim under any provision of the MCPA.

### 2.    Plaintiffs Have Failed to State a Claim Under the ACFA.

The ACFA prohibits a wide range of unfair and fraudulent conduct. It prohibits the "use . . . of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." Ariz. Rev. Stat. § 44-1521(A). The elements of a claim under the ACFA are "[1] a false promise or misrepresentation made

21

in connection with the sale or advertisement of merchandise and [2] the hearer's consequent and proximate injury." *Powers v. Guar. RV, Inc.*, 229 Ariz. 555, 560, 278 P.3d 333, 338 (Ct. App. 2012) (quoting *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342, 666 P.2d 83, 87 (Ct. App. 1983)).   An omission is actionable if "the omission is material and made with the intent that a consumer rely thereon."   *State ex rel. Horne v. AutoZone, Inc.*, 229 Ariz. 358, 361, 275 P.3d 1278, 1281 (2012).   "Deception" is also actionable, and it is broadly defined to include conduct that has the "'tendency and capacity to convey misleading impressions to consumers,' even if 'interpretations that would not be misleading also are possible.'"   *Cheatham v. ADT Corp.*, No. CV-15-02137-PHX-DGC, 2016 WL 540832, at *7 (D. Ariz. Feb. 11, 2016) (quoting *Madsen v. W. Am. Mortgage Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (Ct. App.1985)).   A plaintiff establishes the element of consequent and proximate injury with proof that the plaintiff actually relied "on the misrepresentation [or omission], even though [the] reliance need not [have been] reasonable."   *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605, 617 P.2d 767, 771 (Ct. App. 1980).   A plaintiff does not have to show that the defendant had a specific intent to deceive when the defendant made the misrepresentations, deceptions, or omissions. *Powers*, 229 Ariz. at 560, 278 P.3d at 338.   But a plaintiff alleging an ACFA violation must satisfy the heightened pleading requirements of Rule 9(b).   *See Hevey v. Ford Motor Co.*, No. 12-14257, 2013 WL 4496255, at *3 (E.D. Mich. Aug. 21, 2013) (unpublished).

Plaintiffs have failed to state a claim for violation of the ACFA because they have not alleged facts that if believed would show that Defendant misrepresented or omitted any material fact or deceived Plaintiffs.   The reason is the same reason that has been repeatedly stated above in this opinion:  Plaintiffs have not adduced any facts supporting

22

their conclusory allegations that Defendant's Extended Wear Products were unsafe or that they caused an increased risk of adverse health effects.   Defendant did not mislead Plaintiffs about the safety of its products if the products were in fact safe.

Therefore, Plaintiffs have failed to state a claim under Count 3.

### D.   Plaintiffs Have Failed to State an Unjust-Enrichment Claim Under Arizona or Michigan Law (Count 4).

Plaintiffs claim in Count 4 that Defendant was unjustly enriched because Plaintiffs paid inflated prices for Defendant's Extended Wear Products based on Defendant's allegedly false representations that the products were safe for long-term use.  (FAC pp. 27-29[12]).  The Court holds that Count 4 must be dismissed, for the same reason as the other three counts:  Plaintiffs have failed to allege facts that render plausible their claim that the Defendant's products create an increased risk of adverse health effects.[13]

### 1.   Plaintiffs Have Failed to State an Unjust-Enrichment Claim Under Michigan Law.

A plaintiff alleging unjust enrichment under Michigan law must establish two elements:  "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant."  *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003).  The

---

[12] Plaintiffs have misnumbered the paragraphs in Count 4 of their FAC. The final paragraph in Count 3 is paragraph 100, but the first paragraph in Count 4 is paragraph 72. So, the Court refers to the Court 4 section of the FAC by page numbers.

[13] Defendant also argues that it was improper for Plaintiffs to plead unjust enrichment under the laws of all fifty states (and the District of Columbia) because the elements of an unjust-enrichment claim vary substantially from state to state.  This issue is not ripe for adjudication.  If this case ever proceeds to the class-certification stage, it might be necessary to address the issue at that time.

doctrine of unjust enrichment effectively creates an implied contract or a *quasi* contract between the plaintiff who conferred the benefit and the defendant who was inequitably enriched. *Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 443 Mich. 176, 185-86, 504 N.W.2d 635, 640 (1993). "Because this doctrine vitiates normal contract principles, the courts 'employ the fiction with caution . . . .'" *Id.* at 186, 504 N.W.2d at 640 (quoting *Cascaden v. Magryta*, 247 Mich. 267, 270, 225 N.W. 511, 512 (1929)).

Ordinarily, a plaintiff can establish the first element of the unjust enrichment claim only by proof that the plaintiff *directly* conferred a benefit on the defendant. *See Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (unpublished) ("Notably, caselaw does not specifically state that the benefit must be received directly from the plaintiff, but [*Kammer*, 443 Mich. 76, 504 N.W.2d 635, and other cases] make it clear that it must."); *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (unpublished); *see also In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *25-*26 (E.D. Mich. Apr. 9, 2013) (unpublished) ("Only the direct purchasers [and not indirect purchasers] conferred a direct benefit on Defendants by paying Defendants artificially inflated prices for [Defendants' products]."). Michigan courts have in some instances allowed a plaintiff to recover for an indirect conferral of benefit where the plaintiff is a subcontractor and the defendant is the party that hired the general contractor. This doctrine only applies where the defendant and the plaintiff had some sort of direct *interaction*, however. *See Kammer*, 443 Mich. at 185-87, 504 N.W.2d at 640-41; *Ben's Supercenter, Inc. v. All About Contracting & Excavating,* LLC, No. 302267, 2012 WL 3101837, at *6 (Mich. Ct. App. July 31, 2012) (unpublished)*.*

24

Plaintiffs have failed to state a claim for unjust enrichment under Michigan law because they have not alleged that they directly conferred a benefit on Defendant. The instant case is a case involving consumer plaintiffs and a remote manufacturer. Whatever benefit Plaintiffs conferred on Defendant they conferred indirectly. The instant case does not involve contractors, and there is no allegation of direct interaction between Plaintiffs and Defendant, so the exception from *Kammer* does not apply.

Plaintiffs have also failed to state a claim of unjust enrichment for another reason. Plaintiffs have failed to plead facts that establish the second element of their unjust-enrichment claim. That is, they have not established that it would be inequitable for Defendant to retain the benefit that Plaintiffs (indirectly) conferred on Defendant. The reason is the same reason that has been repeatedly stated above: Plaintiffs have not set forth facts that would make plausible their conclusory allegations that the Defendant's Extended Wear Products were unsafe. Accordingly, based on the facts alleged in Plaintiffs' FAC, the Court cannot conclude that Plaintiffs did not get what they paid for. There is therefore no reason to conclude that Defendant should not keep the profits that it earned from the sale of its Extended Wear Products.

### 2. Plaintiffs Have Failed to State an Unjust-Enrichment Claim Under Arizona Law.

A plaintiff alleging unjust enrichment under Arizona law must establish five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 226 Ariz. 242, 251, 245 P.3d 927, 936 (Ct. App. 2011). "Unjust enrichment occurs when one party has

25

and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 48 P.3d 485, 491 (Ct. App. 2002). "The remedy is flexible and available when equity demands compensation for benefits received, 'even though [the party] has committed no tort and is not contractually obligated to the [other].'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, 283 P.3d 45, 49 (Ct. App. 2012) (quoting *Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985)) (alteration in original).

Unlike under Michigan law, it appears that an indirect connection between the plaintiff and the defendant is sufficient under Arizona law. *See Wang Elec.*, 230 Ariz. at 320, 283 P.3d at 51; *see also Brown v. Pinnacle Restoration LLC*, No. 1 CA-CV 12-0550, 2013 WL 3148654, at *2 (Ariz. Ct. App. June 18, 2013) (unpublished); *Columbia Grp., Inc. v. Homeowners Ass'n of Finisterra, Inc.*, 151 Ariz. 299, 302, 727 P.2d 352, 355 (Ct. App. 1986). However, Plaintiffs have failed to establish the fourth element—an absence of justification for the enrichment and impoverishment. Plaintiffs have not pleaded any facts that would render plausible their claim that Defendant's Extended Wear Products were unsafe, and therefore there is no reason to believe that Defendant was unjustified in retaining the profits it indirectly received from Plaintiffs.

Therefore, Plaintiffs have failed to state a claim under either Michigan or Arizona law. The Court will dismiss Count 4.

### E.    The Court Will Not at This Time Strike the Class Allegations.

Defendant's final argument is that the Court should strike Plaintiffs' class allegations because some of their claims fall outside of the applicable statutes of limitations and because, Defendant argues, Plaintiffs have failed to adequately plead equitable tolling.

26

(Def.'s Mot. Dismiss 32-34).  The instant opinion and order dismisses the entire FAC and therefore moots this issue for the present moment.

### F.      The Court Will Grant Plaintiffs Leave to Amend Their Complaint.

Plaintiffs have requested that the Court allow Plaintiffs to amend their FAC because "virtually all of Defendant's claimed defects are easily remedied technicalities." (Pls.' Resp. 10 (citing Fed. R. Civ. P. 15(a)(2))).  Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave [to amend a complaint] when justice so requires." Grounds for refusing to give leave to amend are "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

As stated repeatedly in this opinion and order, a fundamental flaw permeates all four counts of Plaintiffs' complaint—namely, the failure to plead *any* facts that would render plausible the allegation that Defendant's product created a health risk.  This defect is not a mere technicality, as Plaintiffs contend.    Rather, this defect reflects a serious misunderstanding on the part of Plaintiffs' counsel of the pleading requirements of Rule 8(a)(2) as explained by the Supreme Court in *Twombly* and *Iqbal*.   The Court is sympathetic to the plight of Defendant, which has expended time and money litigating two motions to dismiss.  Indeed, the Court itself has spent substantial time considering the instant motion.

Nonetheless, the Court holds that it is in the interest of justice to allow Plaintiffs one more opportunity to amend their complaint.  During the hearing on the instant motion, Plaintiffs' counsel explained some of the factual grounds for Plaintiffs' contention that use

27

of the Extended Wear Products creates a risk of adverse health consequences. Specifically, Plaintiffs' counsel explained that Plaintiffs' allegations are based on the results of a university study and anecdotal reports by health care providers. Moreover, Plaintiffs' counsel explained in part the mechanism by which Defendant's products allegedly increase the risk of health effects. According to Plaintiffs' counsel, there is evidence that contrary to Defendant's representations, the Extended Wear Products fail to adequate wick a wearer's urine and feces away from the wearer's body, thus causing skin irritation and urinary tract infections. Moreover, Plaintiffs' counsel explained that many or most of the consumers of Defendant's Extended Wear Products have weakened immune systems due to age or illness and that therefore a urinary tract infection or skin irritation can have serious health consequences for these individuals. Based on these representations by Plaintiffs' counsel, the Court concludes that Plaintiffs might be able to amend their complaint to remedy the most serious defect set forth in this opinion and order.[14]

## III. CONCLUSION

The two named Plaintiffs have standing to sue. But Plaintiffs have failed to state a claim upon which relief may be granted to the two named Plaintiffs under any of the four Counts. Therefore, the Court ORDERS that Defendant's motion to dismiss is GRANTED and that Plaintiffs' request for leave to amend their complaint is GRANTED. The Plaintiffs' FAC is hereby DISMISSED WITH LEAVE TO AMEND. Plaintiffs shall have twenty-one

---

[14] The Court is *not* prejudging whether the factual allegations summarized in this paragraph (or the factual allegations that Plaintiffs ultimately add to their second amended complaint) will be sufficient to survive the Rule 12(b)(6) standard. Whether the factual allegations in the second amended complaint are sufficient will be decided once the complaint is amended and upon Defendant's motion.

(21) days from the entry of the instant opinion and order to file a second amended complaint.  If Plaintiffs fail to do so, the Court will enter judgment against Plaintiffs and dismiss the instant action.

       IT IS SO ORDERED.

Dated:  June 3, 2016

                                s/George Caram Steeh<u>                    </u>
                                GEORGE CARAM STEEH
                                UNITED STATES DISTRICT JUDGE

| CERTIFICATE OF SERVICE |
| :---: |
| Copies of this Order were served upon attorneys of record on June 3, 2016, by electronic and/or ordinary mail. |
| s/Marcia Beauchemin<br>Deputy Clerk |